UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JACKIE L. BUSH,                          )
                                         )
                    Plaintiff,           )
                                         )          No. 2:07-CV-257
v.                                       )
                                         )          *Greer / Lee*
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
                    Defendant.           )

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff ("Plaintiff") pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying the Plaintiff a period of disability and disability insurance

benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act"). This

matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal

Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's

motion for summary judgment [Doc. 13] and Defendant's motion for summary judgment [Doc. 17].

For the reasons stated herein, it is **RECOMMENDED** that: (1) Plaintiff's motion for

summary judgment [Doc. 13] be **DENIED**; (2) Defendant's motion for summary judgment [Doc.

17] be **GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be

**DISMISSED**.

## Administrative Proceedings

Plaintiff applied for DIB on June 23, 2005, alleging she became disabled on April 26, 2005,

due to fibromyalgia (Tr. 52-58, 66). After Plaintiff's application was denied initially and on

reconsideration (Tr. 24-25), Plaintiff requested a hearing before an ALJ. Following a hearing on February 26, 2007 (Tr. 587-617), the ALJ issued a decision on March 23, 2007, finding Plaintiff is not disabled because she has the residual functional capacity ("RFC") to perform work that exists in significant numbers in the national economy (Tr. 10-20). The ALJ's decision became the final decision of the Commissioner on August 24, 2007, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4-6).

## **Standard of Review**

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535,

2

548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:

In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.

At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants

3

are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

<u>**ALJ's Findings**</u>

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of the decision.

2.    The claimant has not engaged in substantial gainful activity since the

4

alleged onset of disability.

3.    The claimant's fibromyalgia and degenerative disc disease are considered "severe" based on the requirements in the Regulations . . . .

4.    The medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant has the residual functional capacity as testified to by Dr. Blickenstaff.

7.    The claimant is unable to perform any of her past relevant work . . . .

8.    Considering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education and work experience, she could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy. Examples of such jobs include work as a hand packer, sorter, assembler, inspector, cashier, sales clerk, information clerk, host/greeter, and food service related occupations. This finding is based on vocational expert testimony.

9.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision . . . .

(Tr. 20).

## **Issues**

The issues presented by Plaintiff are:

1.    Whether the ALJ erred in failing to find the Plaintiff suffered from "severe" mental impairments at step two of the sequential evaluation.

2.    Whether the ALJ's finding as to Plaintiff's RFC is supported by substantial evidence in the record.

5

[Doc. 14 at 8, 14].

<u>**Review of Evidence**</u>

***Plaintiff's Age, Education, and Past Work Experience***

Plaintiff was 40 years of age at the time of the ALJ's decision (Tr. 23). She had a high school education and past relevant work, since 1987, as a laborer, machine operator, and forklift driver (Tr. 72, 76).

***Medical Evidence***

It is not necessary to summarize all of the medical evidence, most of which is not in dispute, and only the most pertinent information will be briefly mentioned. Whether or not the medical evidence is summarized herein, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

An undated letter from Plaintiff's treating physician, Daniel Carroll, M.D., appears in the record (Tr. 100). Dr. Carroll's letter states in pertinent part that:

> [Plaintiff] has not been able to work secondary to diffuse fibromyalgia type symptoms with marked weakness fatigability and increased pain. She has had extensive work up and there has not been any evidence of any type of vitamin deficiency, multiple sclerosis, Lupus, or rheumatoid arthritis. She also has been referred to Rheumatologist for chronic fatigue but without any etiology other than her fibromyalgia type symptoms . . . Her fibromyalgia has become severe and debilitating with patient having difficulty doing activities of daily living. She cannot stand for more than fifteen minutes without having to take appropriate rest and does have difficulty with ambulating more than 150 feet at a time. She also does have problems in regards to lifting, pushing, or pulling greater than ten to fifteen pounds. Secondary to her fibromyalgia, chronic fatigue syndrome, and polyarticular arthralgias, [Plaintiff] cannot be employed in any position.

[*Id.*].

6

Horace F. Edwards, Ph. D., completed a psychiatric review technique form ("PRTF") for the state agency on September 17, 2005 (Tr. 247-60). Dr. Edwards indicated Plaintiff suffered from an affective disorder and an anxiety related disorder, but the impairments from this disorder were not severe (Tr. 247). With regard to Plaintiff's affective disorder, Dr. Edwards indicated Plaintiff suffered from depressive symptoms which did not satisfy the "A" criteria of listing 12.04 for affective disorders (Tr. 250). With regard to Plaintiff's anxiety disorder, Dr. Edwards also indicated Plaintiff suffered from anxiety which did not satisfy the "A" criteria of listing 12.06 (Tr. 252). Dr. Edwards further indicated that neither Plaintiff's affective disorder nor her anxiety disorder satisfied the "B" criteria of listing 12.04 or 12.06, respectively (Tr. 257). With regard to the "B" criteria, Dr. Edwards indicated Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and had experienced no episodes of decompensation of extended duration (*id.*).

Samuel Breeding, M.D. performed a consultative physical examination of Plaintiff for the state agency on October 6, 2005 (Tr. 261-64). Plaintiff's chief complaint was fibromyalgia and fatigue (Tr. 261). On physical examination, Plaintiff's gait was normal and she used no assistive devices (Tr. 262). Plaintiff had a normal range of motion of all major joints and her muscle strength was 5/5 in all major muscle groups (Tr. 263). Plaintiff had some diffuse tenderness on palpation of her upper back and her hip and thigh areas and her deep tendon reflexes were 2+/4 (*id.*). Dr. Breeding's assessment was fibromyalgia with fatigue (*id.*). Dr. Breeding opined that Plaintiff could lift up to 35 pounds occasionally, sit for six to eight hours in an eight-hour day; can stand for up to four hours in an eight hour day; and would have difficulty doing sustained physical activity (*id.*).

Dr. William L. Downey completed an assessment of Plaintiff's RFC for the state agency on

7

November 2, 2005 (Tr. 267-74). He indicated Plaintiff had no exertional or postural limitations (Tr. 268-69). Dr. Downey indicated Plaintiff's alleged fibromyalgia was not supported by the medical evidence of record as it lacked painful trigger points (Tr. 274). He indicated Plaintiff's fibromyalgia was not severe (*id.*).

B. Wayne Lanthorn, Ph. D. performed a psychological evaluation of Plaintiff on January 10, 2007 (Tr. 276-83). Based upon a mental status evaluation, social history, and psychological testing, Dr. Lanthorn diagnosed: major depressive disorder, single episode severe; panic disorder associated with both psychological factors and general medical conditions, chronic; and anxiety disorder with generalized anxiety due to chronic medical conditions (Tr. 282). Dr. Lanthorn stated that Plaintiff was having a significantly difficult time with concentration, short-term memory loss, enervation, fatigue and dealing with daily and high degrees of chronic pain (Tr. 283). Dr. Lanthorn also stated that from a purely psychological point of view, it was unlikely that Plaintiff would be able to sustain a 40-hour workweek even at simple and repetitive tasks at this point in time (Tr. 283).

Dr. Lanthorn also completed an assessment of Plaintiff's mental ability to do work-related activity (Tr. 284-85). He indicated Plaintiff had: (1) a good ability to follow simple job instructions; (2) a fair ability to follow work rules; relate to co-workers; function independently; understand, remember and carry out detailed, but not complex, job instructions; maintain personal appearance and behave in an emotionally stable manner; and (3) poor to no ability to deal with the public; use judgment with the public; interact with supervisors; deal with work stresses; relate predictably in social situations and demonstrate reliability (*id.*). Dr. Lanthorn also indicated Plaintiff's ability to maintain attention and concentration ranged from fair to poor/none (*id.*).

8

*Hearing Testimony*

Again, it is not necessary to summarize all of the testimony, most of which is not in dispute. Whether or not the testimony is summarized herein, it has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

### A. *Plaintiff*

Plaintiff, who was 40 years of age at the time of the hearing, testified as follows: She last worked in April 2005 after working approximately 18 years for a paper manufacturer (Tr. 590-92). Plaintiff stated she stopped working because she was extremely fatigued and her doctor told her not to go to work, and after she was off of work for a year, she was terminated (Tr. 593). Prior to the time she stopped working, Plaintiff was off of work for two extended periods of time – three to five months at a time – after Dr. Carroll wrote a statement that she needed to be off work (Tr. 594-95).

Plaintiff stated she saw Dr. Carroll for extreme fibromyalgia (*id.*). She also experiences joint pain and discomfort all over her body, which has worsened since April 2005 (Tr. 595-96). Her hands, feet and hips hurt more than the other parts of her body (Tr. 596). Plaintiff cannot stand for people to touch her hands or put pressure on them (*id.*). The pain in her hands comes and goes and it affects her grip and her ability to open bottles and jars (Tr. 597). Plaintiff experiences pain in her hips if she has been sitting for at least 30 minutes (Tr. 598). She also has trouble standing in one spot for more than ten minutes at a time (*id.*). She has trouble walking due to cramping in her legs (Tr. 599).

Plaintiff stays tired all the time, which affects her ability to engage in her prescribed exercise (Tr. 600). She does a few things around the house, but then has to sit down (*id.*). Her family, husband and eight-year-old daughter help out around the house (Tr. 601). Plaintiff cleans up around

the house, but does not do the laundry because the washer and dryer are downstairs (Tr. 601-02). She stated walking up and down stairs makes her extremely tired (Tr. 602). Plaintiff fixes lunch, watches TV and reads (Tr. 602). She takes two 45 minute naps during the day when her young child sleeps (Tr. 603).

Plaintiff's doctor told her exercise is the best treatment for her fibromyalgia (Tr. 606). She has not been able to exercise on a consistent basis, however, because she does not feel good, is tired, and hurts (Tr. 607). Plaintiff is taking the medications prescribed for her and has not been experiencing any side effects (Tr. 603-04).

She experiences depression and anxiety (Tr. 604). She gets sad because she cannot do things with her eight-year old daughter and is not the healthy, athletic person she was growing up (Tr. 604). She also experiences anxiety and does not handle stress as well as she used to (Tr. 605).

### B. *Medical Advisor*

Theron Blickenstaff, M.D., a medical advisor at the hearing (Tr. 607), testified as follows: He reviewed the medical evidence and listened to Plaintiff's testimony (Tr. 607-08). The record contained about six years of medical records from Plaintiff's primary care provider which do document findings on physical examination consistent with fibromyalgia (Tr. 608). Plaintiff had findings from an MRI of her lumbar spine in August 2006, which could be consistent with degenerative disk disease (*id.*). He opined, based on the medical evidence in the record, that Plaintiff could lift no more than 40 pounds occasionally and 15 pounds frequently (*id.*). He also stated that Plaintiff was being prescribed sedating medication, although sedation was not described in the medical record, and, as a result, Plaintiff should be limited as to her on-the job driving as well as working at heights or around hazardous equipment (*id.*).

10

### C.    Vocational Expert

Donna Jean Bardsley, the vocational expert ("VE") at the hearing (Tr. 613), testified as follows: Plaintiff's past work as a laborer was medium and unskilled work, her past work as a machine operator was also medium and unskilled work, and her past work as a fork-lift operator was medium and semiskilled work (*id.*).  Plaintiff had no transferrable skills (*id.*).

In response to a hypothetical individual of the same age and education and with the same work experience as the Plaintiff with the limitations imposed by Dr. Blickenstaff, the VE stated there would be jobs at the light exertional level such hypothetical person could perform (Tr. 613-14). Examples of such jobs would be hand packagers, sorters, assemblers, inspectors, greeters, sales clerks, information clerks, hostess and greeters, and food service occupations (Tr. 614).  The VE stated there were about 12,000 of such jobs regionally and 10 million nationally (*id.*).  The VE stated that if the same hypothetical individual were limited to the RFC identified by Dr. William L. Downey in his RFC assessment (Tr. 267-74), then that hypothetical individual could perform the same jobs previously identified (Tr. 614).  The VE further testified that if the same hypothetical individual were subject to the limitations identified by Samuel Breeding, M.D. as the result of his consultative evaluation of Plaintiff (Tr. 261-64), such hypothetical individual could perform sedentary jobs including some hand packagers, sorters, assemblers, inspectors, cashiers, information clerks, and order clerks (Tr. 615).  The VE stated there were about 2,500 hundred such jobs regionally and 3 million nationwide (*id.*).  Finally, the VE testified that if Plaintiff were limited to the restrictions identified by her treating physician, Dr. Carroll, there would not be any jobs the Plaintiff could perform (Tr. 616-17).

11

<u>**Analysis**</u>

      **A.**     *Severe Impairments*

Plaintiff first asserts that although the ALJ determined that she suffers from severe impairments of fibromyalgia and degenerative disc disease, the ALJ erred in failing to find she also suffered from severe mental impairments and in failing to consider the effects of these impairments on her ability to work [Doc. 14 at 8]. The Commissioner responds that Plaintiff did not have a medically determinable mental impairment that was of disabling severity [Doc. 18 at 10].

With regard to Plaintiff's mental impairments, the ALJ specifically referenced her treatment by Dr. Carroll and her consultative psychological examination with Dr. Lanthorn and concluded the "record did not document more than a mild impairment or mild symptoms from a mental disorder." (Tr. 17). The ALJ found that Plaintiff had mild limitations in "the ability to perform activities of daily living, maintain social functioning, and sustain concentration, persistence, or pace." (*Id.*). Therefore the ALJ concluded Plaintiff did not have a "severe" mental impairment. (*id.*).

In *Riepen v. Comm'r of Soc. Sec.*, 198 F. App'x 414, 415 (6th Cir. 2006), the Plaintiff argued the ALJ erred in not finding that his multiple sclerosis was a severe impairment at step two of the sequential evaluation process. At step two, however, the ALJ found that the plaintiff did have a severe combination of impairments and continued the sequential evaluation process beyond step two. *Id.* The Sixth Circuit held that because the ALJ ruled in the plaintiff's favor at step two, it need not review the ALJ's conclusion the plaintiff's multiple sclerosis was not a severe impairment at that step. *Id.* The Sixth Circuit stated that even if the ALJ should have found plaintiff's multiple sclerosis was also a severe impairment at step two of the sequential evaluation, the failure to do so "would not be a basis for reversal or remand because the ALJ considered all of [the plaintiff's

12

alleged limitations throughout the remaining steps of the evaluation process." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).  *See also Johnson v. Astrue*, No. 3:07-CV-96, 2008 WL 746686, * 2 (E.D. Tenn. Mar. 18, 2008) (because the ALJ found that plaintiff had severe impairments and moved on to the remaining steps of the sequential analysis, determination of whether any other of the plaintiff's impairments were severe was not necessary).

In this instance, the ALJ specifically found Plaintiff did have "severe" impairments at step two of the sequential evaluation, *i.e.*, "fibromyalgia and degenerative disc disease." (Tr. 20). Moreover, the ALJ considered all of Plaintiff's impairments throughout the remainder of the sequential evaluation process and found all of her impairments reduced her RFC to the level testified to by Dr. Blickenstaff during the hearing; namely, the light level of exertion (Tr. 18-19). Based upon VE testimony, the ALJ identified jobs existing in significant numbers in the national and regional economy which the Plaintiff could perform given her RFC for light work (Tr. 19). Thus, contrary to Plaintiff's assertions, I **FIND** the ALJ did not commit reversible error at step two of the sequential evaluation process.

## B.      The ALJ's RFC Finding

Plaintiff also contends the ALJ's finding as to her RFC is not supported by substantial evidence because: (1) the ALJ erred in crediting Dr. Blickenstaff's opinion as to Plaintiff's RFC over the testimony of the physicians who had examined Plaintiff; (2) the ALJ erred in rejecting the opinion of Dr. Lanthorn, the only psychological examiner of record and played doctor in substituting his own opinion for that of a physician/psychologist as to the limitations imposed by Plaintiff's mental impairment; and (3) the ALJ's RFC finding is flawed due to his failure to properly consider the limitations testified to by Plaintiff during the administrative hearing concerning her bilateral hand

13

impairments and severe fatigue [Doc. 14 at 12-15]. In summary, the Commissioner responds that the ALJ appropriately and reasonably considered and determined Plaintiff's RFC in accordance with the substantial evidence of record [Doc. 18].

### 1. *Medical Sources*

In evaluating Plaintiff's physical RFC, the ALJ did not give controlling weight to the opinions of Plaintiff's treating physician, Dr. Carroll, nor did he give controlling weight to the consultative examiner, Dr. Breeding. Rather, with regard to Plaintiff's physical RFC, the ALJ gave controlling weight to the opinion of the medical advisor, Dr. Blickenstaff. With regard to Plaintiff's mental RFC, the ALJ did not give controlling weight to the opinion of the consultative psychological examiner, Dr. Lanthorn. The ALJ explained his findings concerning the medical source opinions stating:

> The claimant alleges disability due to fibromyalgia and the record reflects that the claimant was treated by her primary care provider Dr. Daniel D. Carroll based on the claimant's subjective complaints with medication and appropriate exercise. . . .

> A consultative evaluation was performed by Dr. Samuel Breeding on October 5, 2006. . . . Dr. Breeding diagnosed the claimant with fibromyalgia with fatigue and opined that the claimant could lift up to 35 pounds occasionally, could sit for six to eight hours in an eight-hour day and would have difficulty doing sustained physical activity.

> Dr. Theron Blickenstaff appeared and testified as a medical expert. The record can best be summarized and evaluated by Dr. Blickenstaff's testimony of follows:

> Dr. Blickenstaff testified that the record contains over six years of primary care provider records beginning in 2000 and that the record does documents some tender points on physical examination that could be consistent with fibromyalgia. Dr. Blickenstaff testified that the examination was normal except for tender points in the upper back, hip and thigh that could be consistent with the diagnosis of

14

fibromyalgia. . . . Dr. Blickenstaff testified that based on the objective evidence in the record it would be reasonable to limit lifting to no more than 40 pounds occasionally and 15 pounds frequently. Dr. Blickenstaff testified that the record did not show that the claimant was being prescribed sedating medication and although sedation is not described in the record but, [sic] he did think it would be prudent to limit driving on the job and limit working at heights and working with or around hazardous equipment. Dr. Blickenstaff testified that he based his limitations on an evaluation of the entire record and found that there is not a significant difference between 35 pounds and 40 pounds and there was nothing in the record other than the MRI supporting abnormalities in the joints and fibromyalgia by definition does not involve joints.

. . .

The Administrative Law Judge finds the testimony of Dr. Blickenstaff to be credible and reliable.

. . .

Accordingly, the undersigned finds that the claimant has the residual functional capacity to perform work activities consistent with Dr. Blickenstaff's testimony that does not involve working at heights, around or with hazardous machinery and limited driving on the job. After carefully considering all the evidence of record, the undersigned concludes that the record does not document more than a mild impairment or mild symptoms from a mental disorder. The Administrative Law Judge finds that the claimant has mild limitations in ability to perform activities of daily living, maintain social functioning, and sustain concentration, persistence, or pace. Therefore, the claimant does not have a "severe" mental impairment.

. . .

The Administrative Law Judge rejects the assessment of Dr. Lanthorn. Dr. Lanthorn's extreme limitations of the claimant's functioning are not consistent with the objective evidence of record. Such severe limitations would be indicative of an extreme deterioration in mental status to warrant hospitalization and regular treatment from a mental health professional. However, the claimant has required no more than conservative treatment with prescribed medications from her primary care physician which was based solely on the claimant's subjective complaints. Moreover, Dr. Lanthorn's limitations are inconsistent with his objective mental status observations. Dr. Lanthorn opined that the claimant's thought processes appeared to be marked by confusion, distractibility and she had difficulty concentrating, he opined the claimant had no useful ability to interact with supervisors, deal with the public, maintain

attention and concentration, relate predictably in social situations; but reported that the claimant was able to perform serial sevens, slowly but correctly, she gave higher order and correct interpretations to two out of three adages, could spell the word "world" backward, he reported that test results indicated that the claimant had no significant problems in such areas as antisocial behavior, problems with empathy, undue suspiciousness or hostility; extreme moodiness and impulsivity, unusually elevated mood or heightened activity and that the claimant is best characterized as open, genuine and conforming and prefers to avoid the leadership role in social and relationships. The claimant reported to Dr. Lanthorn that she went to church once a week, watched television, and socialized with family and friends.

The undersigned concurs with the State Agency physicians that the claimant has no more than mild limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace. The claimant's reported activities include cleaning her home, doing laundry, cooking, taking care of her two children, grocery shopping, swimming and floating in pool, visiting mother in nursing home for to six times a week; goes to church on Sunday and Wednesday, walks daughter around the yard. Further, the undersigned rejects the State Agency physicians that the claimant has no exertional limitations and has given the claimant the benefit of the doubt that she has the residual functional capacity to perform work activity consistent with Dr. Blickenstaff's testimony. The undersigned also rejects the opinion of Dr. Carroll that the claimant is totally disabled due to diffuse fibromyalgia type symptoms with marked weakness and fatigue, and pain. Dr. Carroll's opinion is based on the claimant subjective complaints and is not consistent with the record as a whole. The record reflects that the claimant has not been compliant with medication regiment [sic] as prescribed by Dr. Carroll.

(Tr. 15-19).

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc.*

16

*Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).  The Sixth

Circuit has consistently stated the treating source's opinion is entitled to deference only if it is based

on objective medical findings, *see, e.g.*, *Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342,

347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted

by substantial evidence to the contrary.  *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d

922, 927 (6th Cir. 1987).

   If the treating source's opinion is not given controlling weight, its weight is determined by

the same factors that are considered in evaluating every medical opinion.  It is well-settled law in the

Sixth Circuit that if an ALJ does not accord controlling weight to the opinion of a claimant's treating

source, the ALJ must apply certain factors in determining what weight to give the opinion.  *Bowen*

*v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*,

378 F.3d 541, 546-47 (6th Cir. 2004).  Pursuant to the regulations, the ALJ:

> is to consider (1) the length of the treatment relationship and the
> frequency of examination, (2) the nature and extent of the treatment
> relationship, (3) the supportability of the opinion, (4) the consistency
> of the opinion with the record as a whole, and (5) the specialization
> of the treating source.

*Id.* (quoting 20 C.F.R. § 404.1527(d)).

   The ALJ must weigh the opinions of the acceptable medical sources, including the opinions

of the treating physicians and the state agency medical sources, as required by applicable regulations,

and resolve inconsistencies between the acceptable sources.  *See* 20 C.F.R. §§ 404.1527(d)(4),

(f)(2)(i) and 416.927(d)(4), (f)(2)(i); *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984

(6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical

opinions, which is clearly not a basis for our setting aside the ALJ's factual findings.").  With respect

to weighing the opinions, the Sixth Circuit has held the opinion of a treating physician generally is entitled to greater weight than the contrary opinion of a consulting physician who has examined the claimant on only a single occasion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Hardaway*, 823 F.2d at 927. An ALJ may, however, discount a treating physician's opinion based on an opinion of an examining or a reviewing physician in appropriate circumstances. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

In addition, the ALJ must give good reasons for the weight given a treating source's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005); 20 C.F.R. § 404.1527(d)(2)). This reason-giving requirement is "clearly procedural ensuring 'that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544). The reason-giving requirement in § 404.1527(d)(2) "exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Id.* In the Sixth Circuit:

> [b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions, denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

18

With regard to the physician's reports of record, the ALJ followed the appropriate weight in deciding not to accord controlling weight to the opinion of Plaintiff's treating physician, Dr. Carroll. *See Wilson*, 378 F.3d at 544. The ALJ applied the correct legal standard to weigh the opinions of the acceptable medical sources, as required by applicable regulations, and appropriately resolved inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i).

The ALJ noted that Dr. Carroll's opinion was based on Plaintiff's subjective complaints and his opinion that Plaintiff was disabled from any work was not consistent with the medical evidence of report, particularly the reports of Drs. Breeding and Blickenstaff. The ALJ also noted that Dr. Carroll treated Plaintiff conservatively, but that she was not compliant with the medication regimen he prescribed.

The ALJ also explained his reasons for according great weight to the opinion of Dr. Blickenstaff based upon his testimony at the administrative hearing. Plaintiff asserts, however, the ALJ erred in according great weight to Dr. Blickenstaff, who reviewed the medical record and had the opportunity to hear Plaintiff's testimony at the hearing before he testified, rather than either Dr. Carroll or Dr. Breeding, who performed a consultative evaluation, as both Drs. Carroll and Breeding had the opportunity to personally examine Plaintiff. Contrary to Plaintiff's assertion, the ALJ did not err in according great weight to the opinion of Dr. Blickenstaff although he never examined Plaintiff and only testified as a medical advisor at the administrative hearing. The regulations provide the ALJ with the discretion to decide whether to call a medical expert. *Davis v. Chater*, No. 95-2235, 1996 WL 732298, * 2 (6th Cir. Dec. 19, 1996). The affirmative testimony of a medical advisor can constitute substantial evidence in support of the ALJ's decision if the medical advisor's

opinion is based on the medical evidence, namely, the medical reports from the plaintiff's treating sources. *Johnston v. Sec. of Health & Human Serv's*, No. 93-1467, 1994 WL 198193, * 6 (6th Cir. May 19, 1994) (citing *Atterberry v. Sec. of Health & Human Serv's*, 871 F.2d 567, 570 (6th Cir. 1989)). *See also Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (An ALJ can rely on the testimony of non-examining medical expert physicians to make sense of conflicting evidence in the record). Thus, the ALJ did not err in the weight he accorded to Dr. Blickenstaff's opinion.

With regard to the psychologist's reports, the ALJ articulated his reasons for rejecting the opinion of Dr. Lanthorn as being extreme and not supporting by his own findings as the result of his psychological examination of Plaintiff. Plaintiff complains that having rejected Dr. Lanthorn's opinion, the ALJ played doctor and substituted his own opinion as to the limitations on her mental ability to engage in work or work related activity. Although the ALJ can assess the credibility of witnesses and weigh and/or evaluate their testimony, an ALJ cannot substitute his opinion for that of an examining doctor, particularly in the absence of competing evidence. *Grecol v. Halter*, 46 F. App'x 773, 777 (6th Cir. 2002). An ALJ cannot impermissibly substitute his own views for an uncontroverted medical opinion. *Robertson v. Astrue*, No. 1:07CV64-J, 2008 WL 659458, * 6 (W.D. Ky. Mar. 7, 2008). In this case, however, having rejected Dr. Lanthorn's assessment, the ALJ did not play doctor and substitute his own opinion or assessment as to the Plaintiff's mental functioning or mental RFC for that of Dr. Lanthorn. Having rejected Dr. Lanthorn's assessment, the ALJ adopted the limitations set forth by Dr. Edwards, the state agency reviewer, in his PRTF. The PRTF indicated Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence or pace. These are exactly the limitations found by the ALJ in his decision. Thus, having rejected Dr.

Lanthorn's opinion, the ALJ adopted the limitations to Plaintiff's mental RFC set forth in the only other opinion of a psychologist/psychiatrist which appears in the administrative record. Thus, contrary to Plaintiff's assertion, the ALJ did not play doctor and substitute his own opinion as to Plaintiff's mental ability to engage in work or work related activity.

Contrary to Plaintiff's assertions, I **FIND** the ALJ did not commit reversible error in weighing the medical source evidence of record.

### 2. Subjective Complaints

The ALJ concluded Plaintiff's subjective complaints were not fully credible. Generally, a claimant's self-reported claims of disabling pain are not, standing alone, sufficient to establish disability. *See* 20 C.F.R. §§ 404.1529(a) and 416.929(a). First, such claims must be supported by objective medical evidence (*i.e.*, medical signs and/or laboratory findings) of an underlying medical condition and, second, either the objective medical evidence must confirm the severity of the alleged pain, or the objectively established medical condition must be of such a severity that it can be reasonably expected to produce the alleged pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); 20 C.F.R. §§ 404.1529(a) and 416.929(a). However, a plaintiff need not establish objective evidence of the pain itself. *Felisky*, 35 F.3d at 1039.

The intensity and persistence of the claimant's symptoms must be evaluated to determine whether those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1) and 416.929(c)(1). Relevant evidence for the ALJ's determination includes the claimant's medical history, statements by treating physicians, medications taken, medical treatment other than medication received to relieve pain or other symptoms, methods the claimant has used to relieve pain, precipitating and aggravating factors, daily activities, and statements by the claimant.

21

20 C.F.R. §§ 404.1529(c) and 416.929(c). Ultimately, it is the functional limitations imposed by a condition rather than the diagnosis itself which determines whether an individual is disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Thus, a determination of disability based on pain depends in part on the credibility of the claimant. *Id.*; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 467 U.S. 957 (1983).

In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). "Discounting credibility to a certain degree is appropriate where the ALJ finds contradiction among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded. *Id.*; *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

The record reflects the ALJ reasonably considered a variety of relevant factors in assessing the overall nature and severity of the limitations caused by Plaintiff's impairments, symptoms, and complaints of pain in accordance with the evaluation factors as set forth in SSR 96-7p (Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements) and 20 C.F.R. § 404.1529. In rejecting the Plaintiff's subjective complaints, the ALJ stated:

> In arriving at the . . . residual functional capacity, the undersigned has carefully considered the claimant's subjective complaints in accordance with the above-stated regulations and rulings. The

22

medical evidence shows no objective findings that could reasonably be expected to result in the severity of her symptoms as she described them. The undersigned finds that the claimant's allegations are not credible to the extent alleged. The claimant has degenerative disc disease of the lumbar spine and fibromyalgia which could reasonably be expected to have caused her from [sic] pain or discomfort, and fatigue, but not the degree alleged. . . . The claimant continued to be treated conservatively by Dr. Carroll with Ibuprofen. The Administrative Law Judge notes that the record reflects that the claimant has multiple trigger points and prescribed various medications. . . . It is also noted that in December 2004, the claimant reported that she was getting her energy back. Dr. Carroll reported that in regards to the claimant's fibromyalgia she appeared to be doing fairly well and in January 2005, the claimant noted improvement and was released to work. A treatment note from February 2005 reflected that the claimant was able to work a 40-hour workweek. The claimant was seen by Dr. Carroll in April 2005, complaining of fatigue and reported she had discontinued her medications due to a positive home pregnancy test. In June 2005 . . . claimant was not going to resume taking her medications because she hoped to become pregnant . . . The claimant gave birth April 29, 2006, and in July 2006, reported to Dr. Carroll that she had not been taking her medications because she was breast feeding. The claimant was also treated by Dr. Carroll for depression and anxiety with medication based solely on the claimant's subjective complaints. The record reflects that the claimant was never treated by a mental health professional and had not been referred to a mental health specialist. Although the claimant was prescribed medications the record reflects that the claimant did not follow her prescribed regiment [sic]. The record reflects that went [sic] the claimant followed her prescribed medication regiment [sic] for her degenerative disc disease, fibromyalgia, depression and anxiety the claimant was able to perform work activities. On April 26, 2005, the claimant's alleged onset date, the claimant reported to Dr. Carroll that she had discontinued her medication due to a home pregnancy test. The record reflects that the claimant had not continued her medications again until October 2, 2006 at which time the claimant . . . reported that she was trying to stay active but have [sic] two children was ware [sic] and tear on her and that she takes Xanax only as needed.
. . .

The claimant's reported activities include cleaning her home, doing laundry, cooking, taking care of her two children, grocery shopping, swimming and floating in pool, visiting mother in nursing home for

23

to six times a week; goes to church on Sunday and Wednesday, walks daughter around the yard.

(Tr. 18-19).

The ALJ's specific reasons for his findings on credibility are well-grounded and substantial evidence supports his finding that the record lacked objective evidence to support the degree of limitation Plaintiff alleged. *See McCoy on behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996) ("Subjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability.").

In her memorandum, Plaintiff cites several cases, including *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817 (6th Cir. 1988), for the proposition that fibromyalgia can be disabling [Doc. 14 at 23-24]. Contrary to Plaintiff's position, it is the functional limitations imposed by a condition, not just a diagnosis of the condition, that determines disability. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) (a claimant diagnosed with dysthymic disorder must nevertheless establish that the condition was disabling); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir.), *cert. denied*, 389 U.S. 1060 (1967) (the fact that a person suffers from a diagnosed disease or ailment is insufficient absent proof the condition is severe enough to be disabling, to warrant an award of benefits). A diagnosis of fibromyalgia does not automatically entitle a plaintiff to disability benefits. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). In this instance, the ALJ considered the evidence in the administrative record and determined that Plaintiff's fibromyalgia was a severe impairment which limited her RFC to light work. Thus, contrary to Plaintiff's assertions, I **FIND** the ALJ did

24

not commit reversible error in his determination of her RFC.

Having reviewed the record in light of the Plaintiff's assertions of error, I **FIND** the decision of the Commissioner denying DIB benefits to Plaintiff is supported by substantial evidence in the record. Accordingly, I **RECOMMEND** the decision of the Commissioner be affirmed.

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[1]:

(1)    Plaintiff's motion for summary judgment [Doc. 13] be **DENIED**;

(2)    Defendant's motion for summary judgment [Doc. 17] be **GRANTED**;

(3)    Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4)    This action be **DISMISSED**.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).